No. 10-7

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

DUSTIN JOHN HIGGS,
*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee.*

_____

On Appeal from the United States District Court
for the District of Maryland
Criminal No. PJM-98-0520, Hon. Peter J. Messitte, U.S.D.J.

_____

**PETITION FOR REHEARING OR REHEARING *EN BANC***

_____

| | |
|---|---|
| Leigh Skipper, Esq. | Stephen H. Sachs |
| Chief Federal Defender | Wilmer Cutler Pickering Hale |
| Matthew Lawry | & Dorr, LLP |
| Assistant Federal Defender | 5 Roland Mews |
| Federal Community Defender Office | Baltimore, MD 21210 |
| Eastern District of Pennsylvania | 410-532-8405 |
| Suite 545 West – The Curtis Center | |
| Philadelphia, PA 19106 | |
| 215-928-0520 | |

Dated:      January 9, 2012

## PRELIMINARY STATEMENT

Prior opinions in this case will be cited as follows: this Court's opinion on direct appeal, <u>United States v. Higgs</u>, 353 F.3d 281 (4th Cir. 2003), is cited as "<u>Higgs-1</u>"; this Court's opinion on the new trial motion appeal, <u>United States v. Higgs</u>, 95 Fed. Appx. 37 (4th Cir. 2004), is cited as "<u>Higgs-2</u>"; the District Court's opinion denying the 2255 motion, <u>Higgs v. United States</u>, 711 F. Supp. 2d 479 (D. Md. 2010), is cited as "<u>Higgs-3</u>"; and the panel's opinion denying the 2255 appeal, <u>United States v. Higgs</u>, No. 10-7, 2011 WL 5867958 (4th Cir. Nov. 23, 2011) (attached hereto), is cited as "<u>Higgs-4</u>."

The *Joint Appendix* is cited as "J.A." followed by the page(s). Higgs' *Initial Brief of Appellant* in this Court is cited as "*IB*"; the *Reply Brief of Appellant* is cited as "*RB*." The transcripts of the trial proceedings are cited as "TT" (Trial Transcript) followed by the date of the proceedings, and a page citation. Pre-trial proceeding transcripts are cited as "PTT" (Pre-Trial Transcripts), again followed by the relevant date and page citation.

All other citations are either self-explanatory or are explained. All emphasis is provided unless otherwise noted.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF PURPOSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REASONS WHY REHEARING OR REHEARING *EN BANC* SHOULD BE
GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      The Panel and the District Court Erred in Denying Relief Without an
        Evidentiary Hearing, Where Higgs Presented Colorable Sixth Amendment
        Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     In Conflict with this Court's Decision in <u>Elmore v. Ozmint</u>, Neither the Panel
        nor the District Court Conducted a Totality-of-the-Evidence Review of
        Prejudice, as Required by <u>Strickland</u> and its Progeny. . . . . . . . . . . . . . . . 9

III.    Higgs Has Presented at Least a Colorable Case that He Was Prejudiced by
        Counsel's Deficient Performance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.      Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      The Government's Evidence at Trial Had Problems. . . . . . . . . . . 12

        C.      The Available But Unpresented Evidence Was Powerful. . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . 7

*Elmore v. Ozmint*, 661 F.3d 783 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . 1, passim

*Fisher v. Angelone*, 163 F. 3d 835 (4th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 10

*Griffin v. Warden*, 970 F.2d 1355 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . 1, 6

*Higgs v. United States*, 711 F.Supp.2d 479 (D. Md. 2010). . . . . . . . . . . . . . . . . . 1

*Kimmelman v. Morrison*, 477 U.S. 365 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . 5

*Strickland v. Washington*, 466 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . 1, 2, 5

*United States v. Hale*, 422 U.S. 171 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003). . . . . . . . . . . . . . . . . i, passim

*United States v. Higgs*, 95 Fed. Appx. 37 (4th Cir. 2004). . . . . . . . . . . . . . . i, passim

*United States v. Higgs*, No. 10-7, 2011 WL 5867958
    (4th Cir. Nov. 23, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, passim

*United States v. Magini*, 973 F.2d 261 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . 1, 4

*United States v. Nicholson*, 475 F.3d 241 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . 4

*United States v. Nicholson*, 611 F.3d 191 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . 4

*United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007). . . . . . . . . . . . . . . . . 1, 4

*United States v. Robinson*, 238 Fed. Appx. 954 (4th Cir. 2007). . . . . . . . . . . . . . . 4

*United States v. White*, 366 F.3d 291 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Williams*, 445 F.3d 724 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. Taylor*, 529 U.S. 362 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

**FEDERAL STATUTES**

28 U.S.C. § 2254(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2253. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATE CASES**

*Ragland v. Commonwealth*, 191 S.W.3d 569 (Ky. 2006). . . . . . . . . . . . . . . . . . . . 7

## STATEMENT OF PURPOSE

Pursuant to Rule 35(b) of the Federal Rules of Appellate Procedure and Rule 40(b) of the Rules of the Fourth Circuit, undersigned counsel state that, in our judgment, the panel's opinion and its order denying certificate of appealability (COA) on Issues I and III in Appellant's Initial Brief are inconsistent and in conflict with the following decisions of this Circuit:  United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992) (holding that evidentiary hearing is required when a "colorable Sixth Amendment claim is presented, and ... material facts are in dispute involving inconsistencies beyond the record"); United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007) (when District Court denies § 2255 relief without a hearing, "we review the facts in the light most favorable to the movant"); Griffin v. Warden, 970 F.2d 1355, 1358-59 (4th Cir. 1992) (courts should evaluate counsel's conduct from counsel's perspective at the time, not "conjure up tactical decisions an attorney could have made"); and Elmore v. Ozmint, 661 F.3d 783, 868 (4th Cir. 2011) (Strickland prejudice standard requires reviewing court to "consider *all* of the trial and [post-conviction] evidence favoring [petitioner's] acquittal and then reweigh that evidence against the ... evidence of guilt"; state court unreasonably "discounted evidence favorable to [petitioner] by unduly minimizing its import and considering it piecemeal.").  These conflicts are not addressed in the opinion or the order denying

COA (both attached hereto).

## STATEMENT OF THE CASE

Appellant, Dustin Higgs, was charged with the January 27, 1996 deaths of three women occurring on federal land. On October 11, 2000, Higgs was convicted by a jury on all charges, including nine death-eligible counts. Following a sentencing hearing, the jury recommended that Higgs be sentenced to death on each of the nine death-eligible counts. This Court upheld the judgment on direct appeal, and affirmed the District Court's denial of a new trial motion. Higgs-1; Higgs-2.

Higgs filed a motion for relief under 28 U.S.C. § 2255, and sought discovery and an evidentiary hearing to prove his entitlement to relief. On April 7, 2010, the District Court denied the *2255 Motion* without allowing discovery or an evidentiary hearing. Higgs-3. The District Court specifically rejected Higgs' request that it consider the prejudicial effect of counsel's errors cumulatively. Id. at 551-52. The District Court also denied a COA on all claims. Order of July 20, 2010.

On December 21, 2010, Higgs filed his *Initial Brief of Appellant*, seeking COA and arguing the merits of seven issues, three of which alleged, *inter alia*, claims that trial counsel was ineffective at the guilt/innocence phase of trial under Strickland v. Washington, 466 U.S. 668 (1984), and one of which asserted that the District Court erred in summarily denying relief without allowing discovery or an evidentiary

hearing. On March 3, 2011, this Court granted COA on a single issue – whether Higgs' convictions were obtained through scientifically unsound evidence (hereafter the "CBLA issue").[1]

On November 23, 2011, the panel issued its opinion, finding *inter alia* that trial counsel's failure to investigate challenges to the CBLA evidence was not deficient performance, and that Higgs was not prejudiced, given what it considered "overwhelming evidence of Higgs's guilt, as well as his predominant role in the murders." Higgs-4 at *3.

The panel's ruling on the CBLA issue, together with its ruling denying COA on Higgs' other guilt phase ineffectiveness claims and request for an evidentiary hearing, and the District Court's summary denial of relief and COA on all of those claims, are inconsistent and in conflict with the decisions of this Circuit set forth in the Statement of Purpose, supra.[2]

---

[1] CBLA is an acronym for Comparative Bullet Lead Analysis, a method of attempting to match bullets by a comparison of their elemental compositions. The method, once extensively used by the FBI, has since been discredited as unreliable and is no longer in use. See J.A. 491-92 (National Research Council, "Forensic Analysis: Weighing Bullet Lead Evidence.").

[2] Under 28 U.S.C. § 2253(c), a "circuit justice or judge" may issue a COA. As part of our request for rehearing, we seek rehearing of the denial of COA on Higgs' Strickland claims. Because neither the panel nor the District Court specifically stated reasons for denying COA, we address the District Court's reasoning in denying relief.

These errors pervade the District Court's opinion, on the basis of which the panel denied COA as to Issues I and III of Appellant's Initial Brief. We ask this Court to grant COA on the ineffective assistance claims in Issues I and III, and then either to rehear Issues I through III itself, or to remand for discovery and an evidentiary hearing on those issues. Accordingly, we address all three issues in this rehearing petition.

## REASONS WHY REHEARING OR REHEARING *EN BANC* SHOULD BE GRANTED

**I.    The Panel and the District Court Erred in Denying Relief Without an Evidentiary Hearing, Where Higgs Presented Colorable Sixth Amendment Claims.**

This Court's decisions mandate that an evidentiary hearing be held when a § 2255 movant presents a colorable Sixth Amendment claim that raises disputed issues of material fact. See, e.g., United States v. Magini, 973 F.2d at 264; United States v. White, 366 F.3d 291, 297, 301-01 (4th Cir. 2004); United States v. Robinson, 238 Fed. Appx. 954, 955 (4th Cir. 2007) (unpublished). Furthermore, when, as here, a § 2255 motion has been denied without a hearing, this Court reviews the claims presented "in the light most favorable to the § 2255 movant." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007); accord United States v. Nicholson, 475 F.3d 241, 248 (4th Cir. 2007), subsequent history, 611 F.3d 191 (4th Cir. 2010).

4

Here, Higgs presented colorable Sixth Amendent claims not susceptible of being decided on the existing record, but the panel and the District Court both failed to order an evidentiary hearing and failed to review the claims in the light most favorable to Higgs. These errors pervade the opinions of the panel and the District Court, but they are particularly noteworthy with respect to the deficient performance prong of Higgs' Strickland claims.

Under Strickland, assessing deficient performance requires the reviewing court to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. This means that reviewing courts must not use hindsight to posit a "tactical" reason for counsel's conduct on which counsel did not actually rely, particularly where the failure to investigate deprived counsel of the opportunity to make such a tactical decision. Kimmelman v. Morrison, 477 U.S. 365, 386-87 (1986). This Court has strongly and explicitly condemned any use of manufactured tactical decisions, and has directed reviewing courts to instead consider the actual reasons for counsel's conduct:

> [Counsel] did not even talk to [the witness], let alone make some strategic decision not to call him. [C]ourts should not conjure up tactical decisions an attorney could have made, but plainly did not. The illogic of this "approach" is pellucidly depicted by this case, where the attorney's incompetent performance deprived him of the opportunity to

5

even make a tactical decision about putting [the witness] on the stand.

Griffin v. Warden, 970 F.2d at 1358.

Here, because there has never been an evidentiary hearing, we do not know what if any reasons counsel had for the challenged conduct. That lack of knowledge, however, did not prevent the panel and the District Court from "conjuring up" tactical reasons for counsel's acts and omissions. Not only is this contrary to Strickland, Kimmelman and Griffin, it also is inappropriate under Poindexter and Nicholson, which require reviewing courts to view the facts in the light most favorable to Higgs.

With respect to the deficient performance prong of the CBLA issue, the panel acknowledged that "criticisms of CBLA were already present in the public domain at the time of Higgs's trial ...." Higgs-4 at *9. Higgs alleged that although trial counsel knew CBLA evidence would be an important aspect of the Government's case, counsel failed to consult a defense expert, made no attempt to exclude the CBLA evidence, and accepted the Government's expert (Kathleen Lundy) as qualified without asking a single question about her credentials. TT 10/6/00, 8. The panel brushed aside those allegations on the basis of its view that counsel "conducted a thorough and effective cross-examination" of Lundy, and that "little could have been gained by calling a defense expert ...." Higgs-4 at *9-*10.

This analysis begs the question whether counsel had a reasonable basis for *not*

6

consulting an expert, seeking to exclude the evidence, or attacking Lundy's credentials. These questions remain unanswered because there has not been a hearing at which it could have been determined whether counsel actually made a tactical decision to rely on cross-examination as opposed to taking any of those steps and, if so, whether that decision was based on a reasonable investigation. Contrary to the panel's decision in this case, this Court recently held in Elmore v. Ozmint that where counsel failed to investigate the State's forensic evidence, "there could be no reasonable strategic decision either to stop the investigation or to forgo use of the evidence that the investigation would have uncovered." Elmore, 661 F.3d at 864.[3]

When it addressed the deficient performance prong of Higgs' other ineffective

---

[3] The panel's suggestion that there was "little that could have been gained" by taking such steps is both premature in the absence of a hearing and inaccurate. In Ragland v. Commonwealth, 191 S.W.3d 569 (Ky. 2006), the Supreme Court of Kentucky reviewed a case, tried less than eighteen months after Higgs, at which Lundy testified and in which the defense consulted William Tobin, whose declaration was proffered to the District Court. J.A. 469. In Ragland, the defense sought to exclude Lundy's testimony under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). While that effort failed at trial, it led to reversal of Ragland's conviction on direct appeal. Ragland, 191 S.W.3d at 574-82. We offer this not to "prove" that counsel's performance was deficient, but to show that this was a colorable Sixth Amendment claim on which a hearing should have been held, and to rebut the panel's suggestion that there was "little that could have been gained" by an attack on the reliability of Lundy's findings.

assistance claims,[4] the District Court made similar errors. For example, in reviewing Higgs' claim that counsel was ineffective for failing to impeach key witness Victor Gloria with prior inconsistent statements to, *inter alia*, Keon Dacosta, the District Court suggested that even if counsel had interviewed Dacosta, counsel would have had no reason to question him about his relationship with Gloria. <u>Higgs-3</u> at 510-11. Any reasonable interview of Dacosta, however, would have revealed that he knew many of Higgs's friends, including Haynes and Gloria. <u>See</u> J.A. 458.

Again, the District Court asserted that counsel would have had no reason to investigate Haynes' independent motive to kill the decedents, <u>Higgs-3</u> at 512, although (a) there was testimony at Haynes' trial about such a motive, <u>see</u> <u>Higgs-2</u>, 95 Fed. Appx. at 44 (discussing co-inmate's testimony that Haynes said he "killed the women because one of them owed him and his cousin 'a quarter of a million dollars'"), and (b) counsel had in their possession several United States Park Police reports containing indications that the decedents owed money to drug dealers, and that Haynes killed them over money. <u>See</u> J.A. 191-206, 1015; <u>see</u> <u>generally</u> *IB* at 16-20. Similarly, the District Court simply asserted, despite the lack of a developed record, that counsel had a reasonable basis for failing to make a Confrontation Clause

---

[4] With respect to several of Higgs' claims, the District Court addressed only prejudice.

objection to the admission of Higgs' supposed adoptive-admission-by-silence of an inculpatory out-of-court statement by Haynes.  Higgs-3 at 518.

Neither the panel nor the District Court properly reviewed the deficient performance prong of Higgs' Strickland claims.  Neither court reviewed the facts in the light most favorable to Higgs in order to determine if he was entitled to an evidentiary hearing; instead, both courts manufactured tactical decisions on the part of counsel in the absence of an adequately developed record.

**II.     In Conflict with this Court's Decision in Elmore v. Ozmint, Neither the Panel nor the District Court Conducted a Totality-of-the-Evidence Review of Prejudice, as Required by Strickland and its Progeny.**

In Elmore v. Ozmint, this Court very recently considered the proper method of analyzing prejudice under Strickland and its progeny.  The Court first noted that in Strickland itself, the United States Supreme Court required reviewing courts to "'consider the totality of the evidence before the ... jury' in determining" prejudice. Elmore, 661 F.3d at 868 (citing Strickland, 466 U.S. at 695; Williams v. Taylor, 529 U.S. 362, 397-98 (2000)).  Reviewing Strickland and other ineffective assistance decisions from the Supreme Court, this Court explained that those decisions require a collective prejudice analysis:

> [T]he totality-of-the-evidence standard required the state PCR court to consider *all* of the trial and [post-conviction] evidence favoring [petitioner's] acquittal and then to reweigh that evidence against the

> State's evidence of guilt.  Under that standard, the court should have evaluated the collective trial evidence together with the collective evidence that a reasonable investigation of the State's ... evidence would have uncovered.

Id. (emphasis original).

In Elmore, this Court determined that the state court's item-by-item prejudice analysis "unreasonably discounted evidence favorable to [petitioner] by unduly minimizing its import and evaluating it piecemeal." Id.  As a result, the state court had not simply erred, but had unreasonably applied Strickland and its progeny for purposes of 28 U.S.C. § 2254(d)(1).  Id.

Here, the District Court refused to conduct a collective prejudice analysis with respect to Higgs' Strickland claims, asserting that to do so would violate this Court's precedent.  Higgs-3 at 551-52 (citing Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998)).  The District Court's decision is in direct conflict with Elmore.  Because the panel granted COA only with respect to the CBLA issue, it limited its prejudice analysis to that issue.  See Higgs-4 at *10-*12.  As a result, no court has conducted the collective prejudice analysis required by Elmore.

**III. Higgs Has Presented at Least a Colorable Case that He Was Prejudiced by Counsel's Deficient Performance.**

**A. Introduction.**

Consistent with <u>Elmore</u>, the District Court and the panel should have considered all of the evidence favoring Higgs and reweighed it against the Government's evidence of guilt. <u>Elmore</u>, 661 F.3d at 868. Consistent with <u>Poindexter</u> and <u>Nicholson</u>, in the absence of a hearing, the District Court and the panel should have viewed the facts in the light most favorable to Higgs. When a proper collective prejudice analysis is undertaken, the showing of prejudice on the proffered facts precludes summary denial of relief without a hearing.

First, the evidence presented by the Government at trial was not without its problems, despite the panel's assertion that there was "overwhelming evidence of Higgs's guilt, as well as of his predominant role in the murders." <u>Higgs-4</u> at *3. Even at trial, there were credibility and other questions about much of the Government's key evidence, especially its evidence regarding the respective roles of Haynes and Higgs. Evidence from the trial that raises such questions must be considered as part of the totality-of-the-evidence review. <u>E.g.</u>, <u>Williams v. Taylor</u>, 529 U.S. 362, 398 (2000) (state court unreasonably failed to consider trial arguments of both the prosecution and the defense). Second, the available but unpresented

11

evidence, when considered collectively, would likely have turned the scales in Higgs' favor.

**B.     The Government's Evidence at Trial Had Problems.**

The critical issue at trial was whether Higgs owned the murder weapon, gave it to Haynes and told him to shoot the decedents, or whether Haynes had the weapon and shot them for reasons of his own.  The Government's evidence bearing on that issue – whether Higgs truly had the "predominant role in the murders" –  consisted of (1) the testimony of Victor Gloria; (2) Higgs' purported statements to Domenick Williams; (3) Higgs' lack of response to statements by Haynes read to him by Melvin Grayson; (4) evidence concerning Higgs' participation in shootings at Chaconia and Cherry Lane; and (5) the ballistics and CBLA evidence.  Even at trial, serious questions were raised as to much of this evidence.

**1.     Victor Gloria.**  The linchpin of the Government's case – particularly as to Higgs' supposedly "predominant role in the murders" – was the testimony of Victor Gloria.  Gloria's testimony gave the Government its whole theory of the case and most of the details on which it relied as showing that Higgs had the "predominant role in the murders."  There were serious questions about Gloria's credibility.  As the District Court explained,

Gloria's credibility as a witness was thoroughly explored and impugned

> by Higgs' counsel through vigorous cross-examination. Gloria openly confessed to an extensive criminal history, going so far as to state that 'if it is going to help Victor Gloria, Victor Gloria will do whatever he has to do.'"

Higgs-3 at 508. The jury also knew that Gloria faced charges in this case and both federal and state drug cases, and that the Government had promised to seek a lighter sentence in this case based on his cooperation. J.A. 1002-03.

**2. Domenick Williams.** Higgs' statements to Domenick Williams could be construed as indicating consciousness of some degree of guilt, and as suggesting that Higgs owned the murder weapon. Higgs-1 at 292-93. At trial, however, "Williams' criminal ways were fully apparent to the jury," Higgs-3 at 509, diminishing his credibility.

**3. Melvin Grayson.** At trial, the jury heard a taped conversation between Higgs and fellow inmate Melvin Grayson. Grayson read to Higgs a newspaper account in which Haynes blamed the murders on Higgs; Higgs did not respond. J.A. 1006. It has long been recognized, however, that mere silence in response to such statements "is of little probative force." United States v. Hale, 422 U.S. 171, 176 (1975); accord United States v. Williams, 445 F.3d 724, 735 (4th Cir. 2006).

**4.** **Chaconia and Cherry Lane.** The jury heard evidence that Higgs used a .38 caliber weapon in the Chaconia and Cherry Lane shooting incidents in late 1995. However, the mere fact that Higgs owned and had previously used a .38 caliber weapon is not powerfully inculpatory. The District Court recognized this fact, but only when denying relief on Higgs' claim that counsel should have presented evidence of Gloria's familiarity with .38 weapons. Higgs-3 at 511 ("Mere familiarity with the type of weapon used in the murders would not necessarily have increased the likelihood" that co-defendant Gloria was the shooter).

**5.** **Ballistics and CBLA evidence.** At first glance, the ballistics evidence, which showed that bullets recovered from the murder scene were consistent with those from the 1995 shootings, appears more significant than the evidence of the shootings alone. However, the Government's ballistics expert "conceded that more than 1.5 million weapons could have left the same microscopic markings found on each of the bullets." Higgs-3 at 514. Given this "highly important" and "extraordinarily meaningful" concession, id. at 515, the District Court discounted the significance of the ballistics evidence. Id. at 516.

Because of the concessions that weakened the ballistics evidence, the Government sought to use the CBLA evidence to show that the bullets used at Chaconia matched bullets found in Higgs' apartment, and that bullets found at Cherry

14

Lane matched bullets found at the murder scene.  <u>Higgs-4</u> at *5.  If credible, the CBLA evidence formed a stronger link between Higgs and the murder weapon than the ballistics evidence.

### C.    The Available But Unpresented Evidence Was Powerful.

In his submissions to the District Court and to the panel, Higgs proffered evidence that trial counsel failed to present, which could have been used both to discredit key aspects of the Government's case and to support a credible alternative theory of co-defendant Haynes' independent guilt of first degree murder.

**1.    Victor Gloria.**  Had counsel performed effectively, the jury would have heard significant additional impeachment of Gloria.  Gloria not only told the police that he had passed out and was asleep before and during the shootings, but also had told the same thing to two associates, Keon Dacosta and Katrina Havenner.  J.A. 458 (Dacosta), 461 (Havenner).  Had the jury heard that testimony, they would have had strong reasons to believe that at least the critical portion of Gloria's testimony about Higgs' role in the shootings was false, and was concocted in order, as Gloria himself put it, "to help Victor Gloria."[5]

---

[5] Gloria's cooperation not only earned him a light sentence in this case, but also in the pending drug charge cases.  <u>See</u> J.A. 209; *IB* at  10-11.

15

**2. Domenick Williams.** Had counsel investigated adequately, or had the Government disclosed what it knew about Domenick Williams, Williams could have been significantly discredited. Higgs alleged that Williams was not even housed in the same area of the jail as he was, *2255 Motion*, ¶ 146, casting doubt on the veracity of much if not all of Williams' testimony. Higgs further alleged that "Domenick Williams" is an alias, and that "Williams" had open charges pending against him in Philadelphia under another name. J.A. 81. In the absence of discovery and a hearing at which Higgs could prove these allegations, they must be taken as true. Poindexter, supra. When proven, they will cast substantial doubt on Williams' veracity and motive for testifying, and thus on the credibility of his testimony as to Higgs' supposed statements to him.

**3. Melvin Grayson.** With respect to the purported "adoptive admission" to statements read by Grayson, Higgs alleged that trial counsel's failure to object to admission of the taped conversation on Confrontation Clause grounds was ineffective assistance. *2255 Motion*, ¶¶ 156-65. Had counsel made the appropriate objection, the taped conversation would likely have been excluded. See id.; *IB* at 49-53. Again, the District Court erred in ruling on this issue in the absence of a developed record.

**4. Ballistics and CBLA evidence.** The CBLA evidence appeared more probative than the ballistics evidence, but had counsel performed adequately, they

could have excluded the CBLA evidence or raised serious doubts about the credibility of the Government's expert, Kathleen Lundy. See J.A. 469-78 (declaration of William Tobin, discussing scientific unsoundness of CBLA in general and Lundy's conclusions in particular). Without credible CBLA testimony, there was no forensic link between Higgs and the murder weapon. In the absence of such a link, the Government's case that Higgs had the "predominant role" in the murders essentially came down to the testimony of Victor Gloria – who admitted he would do anything to help himself, who was helping himself by testifying against Higgs, and who told several people, including police officers, that he was asleep or passed out before and during the shootings.

**5.    Willis Haynes.** Moreover, effective counsel could not just have attacked aspects of the Government's case, but also could have presented evidence that co-defendant Haynes killed the decedents for reasons of his own. At Haynes' trial, fellow inmate Gerald Vaughn testified that Haynes said "that he killed the women because one of them owed him and his cousin 'a quarter of a million dollars.'" Higgs-2 at 44. The Government failed to disclose notes of an interview with another inmate, Kevin Anderson, who said that Haynes said "he had to kill the girls because one of them 'may have set him up.'" Id. Also, park police reports provided in discovery to the defense indicate that each of the decedents was involved in the drug

trade; that two of them owed money for drugs; that Haynes killed the decedents over money; and that Haynes was supposed to be the "muscle" for a drug operation. See J.A. 191-206, 1015. Had counsel investigated and developed this evidence, the jury would have been faced with deciding whether Higgs ordered Haynes to kill the decedents because of a petty argument, or whether Haynes killed them because of a drug debt.

In Elmore, after conducting a collective prejudice analysis, this Court found that what the state court said was an "'overwhelming' case against [petitioner] and [petitioner] alone" was no longer overwhelming. Elmore, 661 F.3d at 871. In this case, no court has ever conducted the collective prejudice analysis that Elmore mandates. No court has ever considered whether counsels' performance was deficient based on a fully developed record that includes testimony from trial counsel as to the actual reasons for their actions and omissions, as opposed to speculation about what reasons they might have had. This Court should grant rehearing and remand for discovery and an evidentiary hearing on Higgs' ineffective assistance claims.

# CONCLUSION

For all of the reasons set forth above, Appellant Dustin Higgs respectfully requests that this Court grant rehearing or rehearing *en banc*.

Respectfully submitted,

/s/ Matthew Lawry

Matthew Lawry
Assistant Federal Defender
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for Appellant, Dustin John Higgs

Stephen H. Sachs
Wilmer Cutler Pickering Hale & Dorr
5 Roland Mews
Baltimore, MD 21210
410-532-8405

Dated:      January 9, 2012

## Certificate of Service

I, Matthew Lawry, hereby certify that on this 9th day of January, 2012 I served a copy of the foregoing upon the following persons through ECF filing and by placing two copies in the United States Mail, First Class, postage prepaid:

Deborah A. Johnston
Sandra Wilkerson
Assistant United States Attorneys
Office of the United States Attorney
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770-1249


/s/ Matthew Lawry

_____
Matthew Lawry